UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

———————————————————————— )
                                                   )
DAWN NATALIA; LAWRENCE NATALIA;    )
and GOOSE & GANDER, LLC,                  )
                                                   )
              Plaintiffs,                          )
                                                   )
       v.                                          )       C.A. No. 15-270 S
                                                   )
TAX CREDITS, LLC,                             )
                                                   )
              Defendant.                           )
———————————————————————— )

## MEMORANDUM AND ORDER

William E. Smith, Chief Judge.

       Before the Court is a Request for Entry of Default filed by
Plaintiffs Dawn Natalia, Lawrence Natalia, and Goose & Gander, LLC
("Plaintiffs' Motion") (ECF No. 5), and a Motion to Dismiss for
Lack of Personal Jurisdiction and Objection to Plaintiffs' Motion
filed by Defendant Tax Credits, LLC ("Defendant's Motion") (ECF
No. 8).  Plaintiffs also filed a Reply in Support of their Motion
and an Objection to Defendant's Motion ("Plaintiffs' Reply") (ECF
No. 9).  After careful consideration, both motions are DENIED for
the reasons set forth below.

I.   Background[1]

Plaintiff Goose & Gander, LLC ("G&G") is a Rhode Island limited liability company with a principal place of business in Rhode Island.   G&G is owned by Plaintiffs Dawn and Lawrence Natalia.   Defendant Tax Credits, LLC ("TCL") is a Delaware limited liability company with a principal place of business in New Jersey. On March 7, 2014, Plaintiffs contacted TCL via TCL's website and indicated that Plaintiffs were interested in selling a Massachusetts film tax credit.   (Compl. ¶ 7, ECF No. 1.)   A representative of TCL, hereafter referred to as "CEO," responded, and TCL ultimately helped Plaintiffs sell the credit to another Rhode Island company.   (Id. ¶¶ 9-11.)

On March 25, 2014, Plaintiffs contacted CEO for advice on financing a new project: a feature length film.   (Id. ¶ 12.) Plaintiffs wanted advice on where to look for lender or investor financing.   (Id.)   In response, CEO offered to secure the financing, and Plaintiffs accepted the offer.   (Id. ¶¶ 13-14.)

CEO began to report progress as soon as March 28, 2014, e-mailing Plaintiffs that she had four lenders who were interested in the project.   (Id. ¶ 16.)   On May 29, 2014, CEO e-mailed that she had $25,000 promised for the project.   (Id. ¶ 18.)   Plaintiffs

---

[1]   As this is a motion to dismiss, all facts alleged by the Plaintiffs are taken to be true. See, e.g., Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).

and CEO were in contact on June 3, June 20, and June 24 via e-mail. (Id. ¶¶ 19-21.)  CEO reported that she had $25,000 already obtained and tens of thousands more promised.  (Id. ¶ 21.)  On June 25, CEO assured Plaintiffs that they could expect more than $1 million in funding from her efforts.  (Id. ¶ 22.)  By July 9, CEO was promising an additional $250,000 each from three more lenders. (Id. ¶ 23.)  Based on these assurances, Plaintiffs began putting effort and money into their project.  (Id. ¶ 24.)

By July 16 and 17, CEO claimed that she had already wired money to Plaintiffs' bank account in Rhode Island.  (Id. ¶¶ 26-27.)  She told them the same on July 23 and August 6.  (Id. ¶¶ 29-30.)  Plaintiffs also received an e-mail purportedly from TCL's attorney claiming that the funding was on track.  (Id. ¶ 34.)  During this period, CEO sent Plaintiffs two wire transfer "proofs" from Sovereign Bank that purported to show two money transfers of $750,000 from TCL to Plaintiffs' Rhode Island bank account.  (Id. ¶ 35.)  On August 8, CEO sent what appeared to be a confirmation from Santander Bank, assuring Plaintiffs that the wire transfers had been initiated.  (Id.)  Plaintiffs never received the money. (Id.)  Plaintiffs confirmed with their bank, Bank of America, that no wire transfers were pending for their account and that the confirmations CEO had sent them appeared to be fraudulent.  (Id. ¶ 36.)  On August 11, CEO terminated the project.  (Id. ¶ 37.)

Plaintiffs believe that TCL's activities on the project were almost entirely fabricated, including the documentation CEO sent to Plaintiffs. (Id. ¶ 36.) No money was ever turned over to Plaintiffs despite CEO's promises. (Id. ¶ 35.) Plaintiffs claim they relied on CEO's assurances in advancing their project, expending both time and money. (Id. ¶ 24.)

## II.  Discussion

### A.   Plaintiffs' Motion for Entry of Default

A Request for Entry of Default is granted or denied at the Court's discretion. Steele v. Turner Broad Sys., Inc., 746 F. Supp. 2d 231, 235 (D. Mass. 2010). Here, Plaintiffs explicitly state that they have no objection to the denial of their Request for Entry of Default should the case continue in Rhode Island. (Pls.' Reply 4, ECF No. 9-2.) For the reasons explained below, the Motion to Dismiss for Lack of Personal Jurisdiction will be denied. Given this, and because Defendant is now participating in the case, the Request for Entry of Default is denied.

### B.   Defendant's Motion to Dismiss

A well-pleaded Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). The Court must "accept the well-pleaded facts as true" and "[view] factual allegations in the light most favorable

4

to the plaintiff." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  In order for a motion to dismiss for lack of personal jurisdiction to succeed, the Court must believe either that the defendant is not subject to the state long-arm statute, or that bringing suit against the defendant in the forum would be injurious to traditional notions of fairness.  Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994).

The Rhode Island long-arm statute "is designed to extend jurisdiction to the full constitutional reach." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st. Cir. 2009).  In order to be subject to specific jurisdiction in Rhode Island, the defendant must have had "minimum contacts" with the state. Int'l Shoe Co. v. State of Wash. Unemp't Compensation and Placement, 326 U.S. 310, 316 (1945).  In determining whether the contacts are sufficient to establish specific jurisdiction over a defendant, the Court considers three factors: (1) the relatedness between the contacts and the claims asserted, (2) whether the defendant purposefully availed himself of the laws and privileges of the forum state, and (3) whether asserting jurisdiction in the forum state would be reasonable. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).  As evidenced below, all three factors weigh heavily in favor of jurisdiction when accepting the facts alleged by Plaintiffs as true, as the Court must at this stage.

5

When there is a claim involving fraud or misrepresentation, the relatedness and purposeful availment prongs are met when: (1) the defendant directs mail or information at a forum state, (2) the information is patently false or misleading, and (3) the resident plaintiff suffers harm as a result. N. Am. Catholic, 567 F.3d at 17. A single fraudulent misrepresentation sent into a forum state is sufficient to establish jurisdiction. Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972). Here, according to Plaintiffs, TCL and its representative, CEO, sent Plaintiffs fraudulent and misleading communications via e-mail regarding the funding for Plaintiffs' project; these communications included a fraudulent promissory note, forged assurances from investors, two fraudulent wire transfer "proofs," and a fraudulent bank confirmation. (Compl. ¶¶ 16-36, ECF No. 1.)

Although the First Circuit has not directly addressed fraudulent e-mail communications, Murphy suggests that courts should value substance over form:

> We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger.

460 F.2d at 664. Moreover, other jurisdictions have found that a defendant is subject to personal jurisdiction in a forum state when he sends tortious e-mail communications into that forum,

knowing that the e-mails would be received by residents of the state. See Middlebrook v. Anderson, No. CIV.A. 3:04-CV-2294, 2005 WL 350578, at *4-5 (N.D. Tex. Feb. 11, 2005) (finding sufficient minimum contacts where plaintiffs "established that defendants purposefully directed e-mails to persons in the state of Texas that included allegedly-defamatory statements"); see also ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002) ("[W]e conclude that a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.").

Defendant relies on Phillips v. Prairie Eye Ctr., 530 F.3d 22 (1st Cir. 2008), for the proposition that sending e-mail into a forum state is not sufficient to establish minimum contacts. (See Def.'s Mot. 8-11, ECF No. 8-1.)   However, Phillips is distinguishable in two important ways: (1) the contacts there were limited to only three e-mails, and (2) there were no allegations of fraudulent misrepresentation.   In this case, Defendant sent numerous fraudulent business communications to Plaintiffs – including a fake wire transfer to Plaintiffs' Rhode Island bank account.   Further, Defendant has not claimed that it was unaware

7

the e-mails it sent were directed at Rhode Island residents. Plaintiffs, thus, have successfully demonstrated the relatedness and personal availment prongs to establish personal jurisdiction over Defendant.

Plaintiffs have also pleaded facts sufficient to establish the third prong for personal jurisdiction - that asserting jurisdiction in the forum state would be reasonable.  The Court considers the "gestalt factors" in evaluating this prong:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster, 26 F.3d at 209 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  Here, TCL has failed to demonstrate a burden in adjudicating this case in Rhode Island; a substantial portion of the injurious activities took place in Rhode Island, where Plaintiffs are located; and, as Defendant knowingly directed fraudulent activity towards Rhode Island, it was entirely foreseeable that TCL could be haled into court here.  Furthermore, Defendant has not suggested an adequate forum in which the case could be more appropriately litigated.

8

III. Conclusion

For the foregoing reasons, Plaintiffs' Request for Entry of Default and Defendant's Motion to Dismiss are both DENIED.

IT IS SO ORDERED.

_____

William E. Smith
Chief Judge
Date: July 25, 2016